IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YEFIM ELIKMAN, individually and on behalf of classes of similarly situated individuals,<br><br>        Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO, INC., a Delaware corporation,<br><br>        Defendant. | Case No. 15 C 2093<br><br>Judge Joan H. Lefkow |

## ORDER

Sirius XM Radio, Inc.'s motion to stay (dkt. 30) is granted in part and denied in part. The motion is granted insofar as it seeks a stay pending resolution of the plaintiff's motion for class certification in *Hooker* v. *Sirius XM Radio, Inc.*, No. 4:13-CV-3 (E.D. Va.). The motion is otherwise denied. The status and motion hearing set for Tuesday, December 22, 2015 at 11:00 AM is stricken and reset to Tuesday, January 12, 2016 at 11:00 AM. See Statement.

## STATEMENT

**I.    Background**

On April 1, 2015, Yefim Elikman filed a second amended, putative-class-action complaint against Sirius XM Radio, Inc. (Sirius).[1] (Dkt. 11 (Compl.).) In his complaint, Elikman alleges that Sirius violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, by calling Elikman and other putative class members on their cellular telephones using an automatic telephone dialing system (ATDS) without their prior express consent. (*Id.* ¶ 37.) More specifically, Elikman contends that in an effort to promote its satellite radio service, Sirius began placing unsolicited telephone calls to him in December 2014 using predictive-dialing technology, "which automatically places calls without human intervention until the called party answers the call, at which time such automatic dialer attempts to connect the called party with a human representative." (*Id.* ¶¶ 18, 20.) Elikman seeks damages and injunctive relief.

Shortly after filing his second amended complaint, Elikman and other plaintiffs involved in similar cases across the country filed a joint motion before the Judicial Panel on Multidistrict Litigation (MDL Panel), seeking to transfer seven related actions to this court under 28 U.S.C.

---

[1] Elikman's second amended complaint also named Career Horizons, Inc. (Career) as a defendant, but Elikman voluntarily dismissed Career from the case on May 11, 2015. (*See* dkt. 20.)

1

§ 1407 for coordinated or consolidated pretrial proceedings. (Dkt. 14.) This court stayed the present case on June 9, 2015 pending the MDL Panel's resolution of the joint motion. (Dkt. 26.)

While the parties waited for a decision from the MDL Panel, the Federal Communications Commission (FCC) issued a declaratory ruling and order on July 10, 2015, which, among other things, reaffirmed the FCC's previous decisions that a predictive dialer qualifies as an ATDS within the meaning of the TCPA. *See In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7972 (July 10, 2015). Dissatisfied with that ruling, on July 14, 2015, Sirius and others petitioned the United States Court of Appeals for the D.C. Circuit to review the 2015 FCC order, arguing that the ruling was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See Sirius XM Radio, Inc.* v. *FCC*, No. 15-1218 (D.C. Cir.). Sirius expects that the case will be fully briefed by June 2016. (Dkt. 31 at 7.) The court has not yet set a date for oral argument.

Nearly two months after the FCC issued its declaratory ruling, on August 7, 2015, the MDL Panel denied the joint motion to transfer, finding "that centralization will not serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation." *In re: Sirius XM Radio, Inc., Telephone Consumer Protection Act (TCPA) Litigation*, --- F. Supp. 3d ---, 2015 WL 4710316, at *1 (J.P.M.L. Aug. 7, 2015). The MDL Panel's primary reason for this conclusion was that unlike the other six cases at issue, *Hooker* v. *Sirius XM Radio, Inc.*, case no. 4:13-CV-3, currently pending in the Eastern District of Virginia, "is significantly advanced, with fact and expert discovery completed and class certification briefing poised to commence." *Id.* Accordingly, the MDL Panel explained that "informal cooperation among the involved attorneys and courts is both practicable and preferable to centralization." *Id.* In addition, the MDL Panel "encourage[d] the parties to employ available alternatives to transfer to minimize the potential for duplicative discovery and inconsistent pretrial rulings." *Id.* Since the entry of that order, the plaintiff's motion for class certification in *Hooker* has become fully briefed. (Dkt. 36 at 1.)

Now, Sirius has moved to stay the present case pending the D.C. Circuit's resolution of Sirius's petition for review of the 2015 FCC order or, alternatively, pending a decision on the plaintiff's motion for class certification in *Hooker*.[2] For the reasons stated below, the court declines to stay the case during the pendency of the appeal before the D.C. Circuit but grants a stay pending resolution of class certification in *Hooker*.[3]

## II.     Analysis

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

---

[2] In its reply brief, Sirius reverses the order of its requests, seeking a stay pending resolution of class certification in *Hooker* or, alternatively, pending resolution of the D.C. Circuit appeal. (*See* dkt. 36 at 15.)

[3] The court has jurisdiction under 28 U.S.C. § 1331. Venue is proper in this district under 28 U.S.C. § 1391(b).

counsel, and for litigants." *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936); *see also Tex. Indep. Producers & Royalty Owners Ass'n* v. *EPA*, 410 F.3d 964, 980 (7th Cir. 2005). In deciding whether to grant a stay, courts balance the competing interests of the parties and consider "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012). The movant bears the burden of establishing the need for a stay, *see Itex, Inc.* v. *Mount Vernon Mills, Inc.*, No. 08 C 1224, 2010 WL 3655990, at *2 (N.D. Ill. Sept. 9, 2010), and "if there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

Here, Sirius has not shown that the relevant factors weigh in favor of staying the case pending the D.C. Circuit's resolution of Sirius's petition for review. Indeed, while Sirius argues that the question of whether a predictive dialer constitutes an ATDS is central to this case, and that imposing a stay would therefore simplify the issues in question and reduce the burden of litigation on the parties and the court, the FCC has already held on several occasions that a predictive dialer falls within the statutory definition of an ATDS. *See Griffith* v. *Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 725–27 (N.D. Ill. 2011) (collecting FCC rulings); *Frydman* v. *Portfolio Recovery Assocs., LLC*, No. 11 C 524, 2011 WL 2560221, at *4 (N.D. Ill. June 28, 2011) (same). Thus, it is "overly speculative" at this point to stay the case based solely on the possibility that the D.C. Circuit will invalidate this long line of FCC precedent. *See Itex, Inc.*, 2010 WL 3655990, at *2. Instead, the interests of simplicity and uniformity are better served by allowing this case to proceed within the framework established by the FCC's prior interpretations. *See Jamison* v. *First Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) ("[A] stay is not warranted on this ground because the FCC has already ruled that a predictive dialer constitutes automatic telephone dialing equipment three times.").

Staying the case pending the D.C. Circuit's review would also subject Elikman to the inequity of indefinite delay, as it is unknown when the D.C. Circuit will rule. *See Baxter Int'l, Inc.* v. *Fresenius Med. Care Holdings, Inc.*, No. 08 C 2389, 2008 WL 4395854, at *5 (N.D. Ill. Sept. 25, 2008) (noting that while delay alone does not necessarily constitute undue prejudice, "a delay that is not merely lengthy but potentially indefinite is prejudicial to the non-moving party"). Faced with this possibility of prejudice to Elikman, Sirius has not identified "a clear case of hardship" in being required to move forward before the D.C. Circuit case is resolved. *See Landis*, 299 U.S. at 255. Indeed, Sirius's main argument on this point is that because the Hobbs Act vests the courts of appeals with exclusive jurisdiction over assessing the validity of FCC orders, proceeding with this case before the D.C. Circuit resolves the appeal would leave Sirius without the ability to challenge what it believes to be a lawless FCC order before this court considers class certification or liability. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a); *CE Design, Ltd.* v. *Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010) (holding that the district court lacked jurisdiction under the Hobbs Act to consider the validity of the FCC-created "established business relationship" defense under the TCPA). Assuming this is true, however, any party litigating a case in a federal district court involving FCC regulations would face the

3

same burden of complying with established FCC rulings. Accordingly, the mere fact that Sirius disagrees with the FCC in this instance does not constitute a hardship justifying a stay.[4]

By contrast, staying the case until the *Hooker* court resolves the plaintiff's motion for class certification is warranted. Both this case and *Hooker* arise from the same allegation that Sirius violated the TCPA by placing unauthorized calls to the cellular telephones of the named plaintiffs and the putative class members using an ATDS. (*See* Compl. ¶ 37; dkt. 36-1 (*Hooker* Compl.) ¶ 69.) Further, the proposed class definitions in the two cases are strikingly similar, with each case including a proposed class comprised of all individuals who received unauthorized calls from Sirius or its agents via an ATDS within the relevant limitations period. (*See* Compl. ¶ 29(i); *Hooker* Compl. ¶ 61; dkt. 35-2 at 13 (plaintiff's motion for class certification in *Hooker*).) While both *Hooker* and this case have other proposed classes as well, the class certification issues involved in these two matters are unquestionably intertwined, a fact Elikman acknowledged and even emphasized in his briefing before the MDL Panel. (*See* dkt. 14 at 6 ("Moreover, in the *Knutson*, *Trenz*, *Hooker*, *Robinson*, and *Elikman* actions, the class definitions are nearly identical.").)

Given the factual and legal overlap between the two actions, staying this case pending the *Hooker* court's resolution of class certification will simplify the issues and reduce the burden of litigation by increasing the likelihood of consistent class-certification rulings. *See Piekarski* v. *Amedisys Ill., LLC*, No. 12 C 7346, 2013 WL 2357536, at *3 (N.D. Ill. May 28, 2013) (staying a later-filed class action pending resolution of class certification issues in the earlier-filed, related class action because doing so would "prevent[] inconsistent rulings"). Indeed, staying the case under the present circumstances is the sort of alternative to consolidation that the MDL Panel envisioned. *See In re Sirius XM Radio, Inc.*, 2015 WL 4710316, at *1 ("We encourage the parties to employ available alternatives to transfer to minimize the potential for . . . inconsistent pretrial rulings."). Moreover, with respect to the third factor, Elikman has not identified any undue prejudice or tactical disadvantage that he will suffer as a result of a stay, particularly given that the *Hooker* motion for class certification is fully briefed. Accordingly, the court will stay the case until class certification is resolved in *Hooker*.

Date: December 21, 2015

                                                           */s/ Joan H. Lefkow*
U.S. District Judge Joan H. Lefkow

---

[4] Sirius filed a similar motion in the *Hooker* action, seeking a stay during the pendency of the D.C. Circuit appeal. The *Hooker* court denied that motion on September 25, 2015, finding, among other things, that the possibility of a ruling in Sirius's favor by the D.C. Circuit was highly "speculative," making a stay a "waste of time." (Dkt. 34-1 at 6–7.)